United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANNIE AHN, et al.,
Plaintiffs,
v.
SANTA CLARA COUNTY,
Defendant.

Case No. 25-cv-06980-PCP

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: Dkt. No. 34

Defendant Santa Clara County moves to dismiss the religious-discrimination claims of 32 current and former employees who allege that both the county failed to accommodate their religious objections to its employee vaccine and booster mandate during the COVID-19 pandemic and that the county treated them less favorably than employees with medical exemptions. For the reasons below, the motion is granted in part with leave to amend.

**BACKGROUND**

This case concerns Santa Clara County's COVID-19 vaccine and booster mandates for employees working in high-risk settings during the COVID-19 pandemic. Plaintiffs are 32 current or former employees who requested religious exemptions from the mandates. They allege that, although the county purported to grant plaintiffs' requested exemptions, the county then subjected them to adverse employment actions due to their refusal to receive COVID-19 vaccines or boosters. For example, the county allegedly failed to offer reasonable accommodations, such as allowing plaintiffs to remain in their positions while using masking and regular testing to mitigate the spread of COVID-19. Plaintiffs also allege that, when reassigning workers who received exemptions from the vaccine or booster mandates from high- to low-risk settings, the county expressly gave "priority consideration" to employees with medical or disability-related exemptions. As a result, the county failed to find new positions for individuals with religious

United States District Court
Northern District of California

exemptions, who were instead forced to take unpaid administrative leave and lost their employment benefits.

Plaintiffs claim that the county's failure to accommodate their religious beliefs and practices violated Title VII of the federal Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), and California's Fair Employment and Housing Act (FEHA), Cal. Gov't Code § 12940. And because plaintiffs allege that the county treated them less favorably than employees who received non-religious (e.g., medical) exemptions, plaintiffs assert claims under 42 U.S.C. § 1983 for violations of the First Amendment's Free Exercise Clause and resulting *Monell* liability. The plaintiffs in this action were formerly members of the class in *UnifySCC v. Santa Clara County*, No. 22-cv-1019, another case asserting nearly identical claims against the county. After the court presiding over *UnifySCC* decertified the class in that case, *see UnifySCC v. Cody* ("*UnifySCC I*"), No. 5:22-CV-01019-BLF, 2025 WL 1474757, at *13 (N.D. Cal. May 21, 2025), plaintiffs filed their complaint in this action.

The county now moves to dismiss the complaint on three grounds, arguing that: (1) the county is immune from plaintiffs' FEHA claims under California Government Code § 855.4; (2) plaintiffs fail to allege that any adverse employment action or less favorable treatment stemmed from a "religious" belief or practice protected by Title VII or the First Amendment; and (3) eight plaintiffs failed to exhaust administrative remedies as required by Title VII.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Dismissal is required if the plaintiff fails to allege facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the nonmoving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## ANALYSIS

### I. The county is immune from plaintiffs' FEHA claims.

The county moves to dismiss plaintiffs' claims under California's FEHA on the basis that the county is immune from liability for governmental decisions to promote public health under California Government Code § 855.4. That provision states:

> Neither a public entity nor a public employee is liable for an injury resulting from the decision to perform or not to perform any act to promote the public health of the community by preventing disease or controlling the communication of disease within the community if the decision whether the act was or was not to be performed was the result of the exercise of discretion vested in the public entity or the public employee, whether or not such discretion be abused.

Cal. Gov't Code § 855.4. Section 855.4 also provides that a public entity is not liable for injuries "caused by an act or omission in carrying out with due care" such a decision. *Id.* "Thus, to establish immunity under section 855.4, the [c]ounty must demonstrate that any injury resulting from its failure to accommodate [p]laintiffs' religious beliefs was the consequence of a discretionary decision made in service of promoting the public health." *UnifySCC v. County of Santa Clara* ("*UnifySCC II*"), No. 22-CV-01019-BLF, 2026 WL 497573, at *3 (N.D. Cal. Feb. 23, 2026). Plaintiffs argue that § 855.4 offers no immunity from the county's mandatory duty under FEHA to accommodate their religious beliefs and, in any event, that the county's challenged denials of religious accommodations were ministerial acts, not discretionary acts to which

§ 855.4 immunity may attach.

Another court in this district recently addressed this issue in *UnifySCC*. *See UnifySCC II*, 2026 WL 497573, at *3–6. As noted above, that case involves a challenge to the same county policies at issue here based on the same grounds—indeed, plaintiffs were parties to that action prior to the decertification of their class. So that case is on all fours with this one, and this Court agrees with and adopts the *UnifySCC* court's reasoning in full. For the reasons explained by that court, "section 855.4 immunity prevails over a mandatory duty of FEHA." *Id.* at *4–5. And plaintiffs' complaint and the exhibits thereto, which mirror the undisputed facts in *UnifySCC*, "demonstrate that the [c]ounty's decision not to allow unvaccinated employees to work in-person in high-risk settings was a policy decision made to promote the public health of the community by preventing the spread of disease." *Id.* at *4. Thus, "[t]o the extent the [c]ounty failed to accommodate [p]laintiffs as a consequence of [its] policy and implementation thereof, those injuries flow from the [c]ounty's discretionary decisions made in service of promoting the public health," such that § 855.4 immunity applies. *Id.* The complaint fails to identify any "ministerial" acts that both plausibly violate FEHA and do not flow from the county's discretionary public-health decisions. *See id.* at *5.

Accordingly, the county's motion to dismiss plaintiffs' FEHA claim is granted.

## II. Only certain of plaintiffs' alleged beliefs are plausibly "religious" in nature.

The county next argues that 30 plaintiffs' Title VII and First Amendment claims should be dismissed because those plaintiffs fail to allege that any adverse employment action or unfavorable treatment was based on a "religious" belief or practice. These plaintiffs' alleged objections to COVID-19 vaccination fall into two broad categories: (1) those driven by individual prayer or general religious tenets concerning the sanctity of the "body [a]s a temple," the need to avoid ingesting unnatural or foreign substances, and the importance of free agency and following one's conscience; and (2) those based on objections to the vaccines' claimed development using fetal cell lines.

"To merit protection under the free exercise clause of the First Amendment, a religious claim … must be rooted in religious belief, not in 'purely secular' philosophical concerns." *Malik*

*v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (citation modified). Similarly, to plead a *prima facie* failure-to-accommodate case under Title VII, a plaintiff must allege that they "had a bona fide religious belief, the practice of which conflicted with an employment duty." *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993). Title VII does not specify what makes a belief or practice "religious" in nature, and federal courts generally determine religiosity for Title VII purposes by reference to the First Amendment. *See, e.g.*, *Detwiler v. Mid-Columbia Medical Ctr.*, 156 F.4th 886, 894 (9th Cir. 2025) ("[T]his court regularly looks to First Amendment doctrine for guiding principles to assess a plaintiff's assertions of religious belief" in Title VII cases.). The Court therefore assesses the adequacy of plaintiffs' allegations concerning the religiosity of their beliefs for both First Amendment and Title VII purposes under the same framework.

The Ninth Circuit recently explained the applicable standard for what constitutes a "religious" objection in *Detwiler*, 156 F.4th at 895–900. There, plaintiff Sherry Detwiler sought a religious exemption from her employer's vaccination mandate. Her employer granted the exemption but required Detwiler to mask in the workplace and submit to weekly antigen testing, which involved a nasal swab dipped with ethylene oxide. *Id.* at 891. In response, Detwiler requested a further accommodation in the form of an exemption from antigen testing. She explained that, as part of her daily prayers, she "ha[d] asked God for direction regarding the current COVID testing requirement," and "[a]s [she] ha[d] prayed about what [she] should do, the Holy Spirit ha[d] moved on [her] heart and conscience that [she] must not participate in COVID testing that causes harm." *Id.* Because Detwiler believed that "[e]thylene [o]xide … is carcinogenic to humans," she "f[ou]nd testing … to be in direct conflict with [her] Christian duty to protect [her] body as the temple of the Holy Spirit." *Id.*

Noting that Detwiler's belief that nasal-swab testing was harmful rested on her underlying opinion that ethylene oxide was carcinogenic, the Ninth Circuit concluded that Detwiler's beliefs were medical and scientific in nature, not truly religious. *Id.* at 890, 895. The court explained that an employee cannot allege a bona fide religious belief merely through an "unadorned conclusion" labeling a certain practice "religious." *Id.* at 893. Nor do "[i]nvocations of broad, religious tenets …, on their own, convert a secular preference into a religious conviction." *Id.* at 895. And while

United States District Court
Northern District of California

there was no doubt about the "religiosity of Detwiler's belief in her body as a temple [or] even the implied prohibition on ingesting harmful substances," Detwiler's "alarm about the test swab [wa]s far too attenuated" from that "general religious tenet" to "treat the two as part of a single belief." *Id.* Similarly, Detwiler's "[i]nvocation of prayer, without more, [w]as insufficient to elevate personal medical judgments to the level of religious significance," as holding otherwise would "amount to a blanket privilege and a limitless excuse for avoiding all unwanted obligations." *Id.* at 897.

*Detwiler* squarely controls this case. The first category of objections that the county challenges as secular—i.e., those based on personal prayer or on beliefs that one's body is a temple, that one should avoid ingesting foreign or unnatural substances, or that God compels the exercise of free agency—are functionally identical to the objections at issue in *Detwiler*. *See* Dkt. No. 32 ¶¶ 9, 10, 13, 14, 15, 16, 17, 19, 20, 21, 24, 29, 30, 31, 34, 37, 40. While the complaint frames plaintiffs' objection in terms of broad religious tenets, there is no direct connection between the two. Rather, plaintiffs' objections to vaccination are tied to their alleged religious beliefs that they must not harm their bodies or ingest unnatural substances only by virtue of their secular beliefs that the COVID-19 vaccines are harmful or unnatural. *See id.* ¶¶ 9, 10, 13, 14, 15, 16, 19, 20, 21, 24, 29, 34, 37, 40. For example, plaintiff Annie Ahn explains that her Buddhist faith forbids "acts that lead to the destruction of any potential life." *Id.* ¶ 9. She therefore objects to COVID-19 vaccination because she has not received a sufficient "guarantee that the experimental vaccine will not do any harm to her body"—i.e., based on secular fears that the vaccine is unsafe. *Id.* Similarly, plaintiff Rashaad Malvo "believes that his body is a temple of the Holy Spirit and … the Holy Scripture instructs him not to ingest any foreign substance or anything unclean into his body." *Id.* ¶ 24. But that general religious tenet is tied to his objection to COVID-19 vaccination only because of a medical concern that "[t]he vaccines contain unclean substances" and "genetically modifying material." *Id.* Under *Detwiler*, that connection "is far too attenuated" to treat "the broad principle" and the ultimate objection to vaccination "as part of a single belief." 156 F.4th at 896. And some plaintiffs fail even to draw such an attenuated connection, instead resting on bare assertions that their objections were the result of prayer or compelled by God. *See*

Dkt. No. 32 ¶¶ 17, 30, 31. For example, plaintiff Sinora Freedland alleges that her objection is based on her view "that the vaccine mandate does not fall under one of the recognized ordinances of the Church of God" and that she may not "put something in her body that she does not have peace about." Dkt. No. 32 ¶ 17. Such "unadorned conclusions" of religiosity or invocations of "individual prayer" would "cover anything plaintiffs train it on" and are insufficient to show that an objection is truly religious in nature. *Detwiler*, 156 F.4th at 893, 897. Thus, objections in this first category are unprotected by Title VII or the First Amendment.

As to the second category of objections—i.e., those based on the purported use of fetal cell lines to develop the vaccines—the county concedes that plaintiffs Lawanda Avila and Coorina Ayala adequately tie their objections directly to specific beliefs that God forbids abortion as a form of murder and thus that the alleged use of fetal cell lines derived from abortion is against God's will. *See* Dkt. No. 32 ¶¶ 11, 12. For example, as to Ayala, the complaint alleges:

> [T]o inject a vaccine with aborted fetal cells would break God's 5th commandment to not murder because she believes abortion is murder according to Holy Scripture, and it would also break the 6th Commandment to not commit adultery because the 6th Commandment is about keeping oneself pure and chaste. Purity of body and soul has been a constant practice for her, and taking the COVID vaccine, which is made or tested with aborted fetal cells—products of abortion/murder—would gravely stain the purity of her body and soul and therefore violate her religious beliefs.

Dkt. No. 32 ¶ 12. As the county appears to recognize, this is a far cry from the type of secular objection with only an attenuated connection to abstract religious principles at issue in *Detwiler.* Indeed, *Detwiler* suggested that such "a specific religious belief in opposition to receiving [a] vaccination" based on "opposition to the use of fetal cells" is "religious" for Title VII purposes where a plaintiff "identifie[s] the religious basis for their objection to vaccination as their … faith's opposition to abortion." 156 F.4th at 896 n.2 (citing *Keene v. City and Cnty. of San Francisco*, No. 22-16567, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023)).

But the county challenges the sufficiency of thirteen other plaintiffs who object to COVID-19 vaccination based only on the vaccines' purported development using of fetal cell lines, without explaining how the use of fetal cell lines contravenes any specific religious tenet. *See* Dkt.

United States District Court
Northern District of California

No. 32 ¶¶ 18, 22, 23, 25, 26, 27, 28, 32, 33, 35, 36, 38, 39. For example, plaintiff Danele Howard stated only that "that the presence of fetal cell cultures in the vaccine violates her religious beliefs," and plaintiff William Kozich similarly alleged that "[h]e believes … the presence of the aborted fetal cells violates the Holy Scripture." Dkt. No. 32 ¶¶ 21–22. Because these objections are not tethered to specific religious beliefs and instead rely on unadorned conclusions that the alleged use of fetal cell lines in COVID-19 vaccines violates plaintiffs' religion, the objections are, at least as presently alleged, insufficient to invoke protections for religious belief under the standard articulated in *Detwiler*.[1]

Plaintiffs' only argument to the contrary fails. Rather than argue that their complaint satisfies *Detwiler*, plaintiffs attempt to distinguish *Detwiler* on the grounds that it concerned objections to antigen testing, not vaccination. But the analysis in *Detwiler* focused on nature of and grounds for the plaintiff's belief, not the particular requirement to which she objected. *See* 156 F.4th at 892 (noting that the case concerned the "test for determining the nature, whether religious or secular, of a belief"). And in recent months, multiple district courts have applied *Detwiler* to conclude that objections to vaccine mandates similar to those at issue in this case are secular, not religious. *See, e.g.*, *Henson v. PeaceHealth Peace Harbor Med. Ctr.*, No. 6:23-CV-01101-AP, 2025 WL 4035355, at *5 (D. Or. Nov. 18, 2025) (suggesting that objections based on plaintiff's "assert[ion] that her body is a temple and that she prayed … are insufficient to show a conflict between her religious beliefs and the vaccine mandate"), *report and recommendation adopted*, No.

[1] In some cases, the fact that one plaintiff (like Ayala) has plausibly alleged that a particular belief is religious in nature may be sufficient to infer that the similar beliefs of other plaintiffs (like Howard and Kozich) are also religious. After all, a "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). But as the Supreme Court has recognized, religious beliefs are "intensely personal," *United States v. Seeger*, 380 U.S. 163, 184, (1965), and consequently idiosyncratic. Indeed, differences of belief "are not uncommon [even] among followers of a particular creed[.]" *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 715 (1981). So the mere fact that the plaintiffs here all object to COVID-19 vaccination does not, without more, support an inference that their objections are based on the same underlying reason. The same objection could arise from very different religious convictions, ranging from opposition to the alleged use of fetal cell lines derived from abortions prohibited by one's faith to a blanket religious prohibition on all medical intervention or vaccination. Because the complaint lacks any allegation that plaintiffs like Howard and Kozich share the same beliefs as plaintiffs like Ayala, the Court cannot infer that their objections derive from the same religious basis. Plaintiffs have not argued otherwise.

6:23-CV-01101-AP, 2026 WL 94605 (D. Or. Jan. 13, 2026); *see also Skidmore v. J.R. Simplot Co.*, No. 1:23-CV-00477-BLW, 2025 WL 3754341, at *4 (D. Idaho Dec. 29, 2025); *Castaneda v. State of Cal. Dep't of Motor Vehicles*, No. 2:24-CV-0788-DC-SCR, 2025 WL 3012219, at *4 (E.D. Cal. Oct. 28, 2025).

In sum, the allegations in the complaint are insufficient under *Detwiler* to establish that any plaintiffs other than Avila and Ayala objected to the county's COVID-19 vaccine mandate based on religious beliefs. The Court therefore dismisses the complaint's first and second causes of action, for alleged violations of Title VII and the First Amendment's Free Exercise Clause, as to all plaintiffs except Avila and Ayala. Because the complaint's fourth cause of action for *Monell* liability under 42 U.S.C. § 1983 is premised on an underlying violation of the First Amendment, that claim is also dismissed as to all plaintiffs except Avila and Ayala. *See Cheairs v. City of Seattle*, 145 F.4th 1233, 1247 (9th Cir. 2025).

Although the county does not challenge the adequacy of Avila and Ayala's allegations as to the religious nature of their objections, it nevertheless moves to dismiss plaintiffs' complaint in its entirety, include Avila and Ayala's federal religious-discrimination claims. The only discernible basis for the county's request to dismiss these two plaintiffs' claims is the county's suggestion that their concededly religious objections are premised on an incorrect belief that COVID-19 vaccines contain or were developed using fetal cell lines. Whether or not the vaccines contain or were developed using fetal cell lines is a factual dispute better suited for summary judgment. The county attempts to resolve that factual dispute at the pleading stage by requesting that the Court take judicial notice of material stating that fetal cell lines are not used in the creation of COVID-19 vaccines. But even assuming that this material is judicially noticeable, which plaintiffs dispute, the Court may take notice only of the material's existence and may not assume the truth of its contents. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018). Because the allegations in the complaint support an inference that COVID-19 vaccines were developed using fetal cell lines in some way, the Court need not consider at this stage whether the scientific inaccuracy of a religious objection would deprive the plaintiff of Title VII

United States District Court
Northern District of California

and First Amendment protections. The county's request to dismiss Avila and Ayala's Title VII, First Amendment, and *Monell* claims is denied.

**III. It is too early to determine whether certain plaintiffs exhausted their administrative remedies.**

Finally, the county argues that eight plaintiffs' Title VII claims should be dismissed for failure to exhaust administrative remedies. Because the Court dismisses the Title VII claims of these eight plaintiffs for the reasons discussed above, it is not strictly necessary to address whether they exhausted their administrative remedies. Given the high likelihood that the county will reassert this argument upon plaintiffs' filing of an amended complaint, however, the Court briefly explains why the county's arguments concerning exhaustion fail at this stage.

As a prerequisite to filing Title VII claims in federal court, a plaintiff must first file a charge with the Equal Employment Opportunity Commission or an equivalent state agency and receive a right-to-sue letter. 42 U.S.C. § 2000e-5(e)(1); *Scott v. Gino Morena Enters., LLC*, 888 F.3d 1101, 1106 (9th Cir. 2018). Because California has a state agency with authority to enforce the state's own anti-discrimination laws, plaintiffs were required to file their charges with that agency or the EEOC within 300 days after the allegedly unlawful employment practice being challenged. *See* 42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

The county argues that the last employment action at issue in this case occurred on November 1, 2021, which a county directive listed as the date by which "to ensure unvaccinated staff were no longer working in high-risk roles." Dkt. No. 32-3, at 2.[2] The county therefore contends that plaintiffs' initial deadline to file their charges fell on August 28, 2022 (i.e., 300 days after November 1, 2022). But on August 23, 2022—five days before the deadline—the class-action complaint was filed in *UnifySCC*, which tolled plaintiffs' claims until the decertification of the class in that case on May 21, 2025. *See UnifySCC I*, 2025 WL 1474757, at *2, 13 (describing

[2] Because the directive is attached to the complaint as an exhibit, the Court may consider it on a motion to dismiss. *See Youth 71Five Ministries v. Williams*, 160 F.4th 964, 989 (9th Cir. 2025).

procedural history and decertifying class); *see also Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) (holding that the filing of a class-action complaint "suspends the applicable statute of limitations as to all asserted members of the class" until class certification is denied). Thus, in the county's view, plaintiffs' ultimate deadline to file their administrative charges was five days after decertification of the class in *UnifySCC*—that is, on May 26, 2026. Eight plaintiffs failed to file their charges by that date, so the county argues that those plaintiffs' Title VII claims have not (and cannot) be exhausted.

The problem with the county's argument is that the complaint does not conclusively establish that November 1, 2021 was the last date on which plaintiffs experienced an adverse employment action based on their religious beliefs. The exhibit on which the county relies shows only that November 1, 2021 was the county's deadline to remove unvaccinated workers from high-risk settings. But it is reasonable to infer that other allegedly adverse employment actions occurred later on. For example, most of the plaintiffs who filed charges after May 26, 2026 allege that the county discriminated by failing to reassign them to jobs in lower-risk settings. *See* Dkt. No. 32 ¶¶ 9, 19, 21, 33, 34, 36, 37. Reassignment (or a failure to reassign) would have occurred only after the plaintiffs were removed from high-risk settings—i.e., after November 1, 2021. And the remaining plaintiff who submitted a charge after May 26, 2026 alleges discrimination based on his failure to comply with the county's January 24, 2022 booster mandate, not the November 1, 2021 vaccination mandate. *See* Dkt. No. 32 ¶ 22; Dkt. No. 32-4 at 3. So the complaint does not support the county's contention that the time for filing a charge necessarily began on November 1, 2021, nor does it supply the precise date on which that clock started run. And because this is not the "rare" case where "a failure to exhaust is clear on the face of the complaint," the county's exhaustion defense "should … be raised on summary judgment," not at the pleading stage. *McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 909 n.6 (9th Cir. 2020).

Because the complaint does not require the conclusion that any plaintiff's charge was untimely, the county's request to dismiss any plaintiff's Title VII claim for failure to exhaust administrative remedies would, if not already moot, be denied.

United States District Court
Northern District of California

## CONCLUSION

For the foregoing reasons, the county's motion to dismiss is GRANTED in part and DENIED in part. The Court hereby dismisses all plaintiffs' FEHA claims based on § 855.4 immunity and dismisses the Title VII, First Amendment, and *Monell* claims of all plaintiffs except Avila and Ayala for failure to allege a "religious" objection to the county's COVID-19 vaccine mandate.

When plaintiffs filed their complaint, they did not have the benefit of *UnifySCC II*'s analysis on § 855.4 immunity, and the Ninth Circuit had not yet issued its order denying *en banc* review and the subsequent mandate in *Detwiler*, *see* 172 F.4th 1072 (9th Cir. 2026) (mem.). The Court therefore grants plaintiffs leave to file an amended complaint within 30 days of this order in order to (1) identify ministerial acts violative of FEHA that do not stem from discretionary public-health decisions would not be subject to § 855.4 immunity and (2) to cure the deficient allegations concerning the religiosity of plaintiffs' objections to vaccination for COVID-19.

**IT IS SO ORDERED.**

Dated: August 10, 2026

P. Casey Pitts
United States District Judge